No. 17-4630

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

PATRICK FALTE,
*Defendant/Appellant.*

———————

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. John A. Gibney, Jr.)

———————

BRIEF OF THE APPELLANT

———————

GEREMY C. KAMENS
Federal Public Defender

Frances H. Pratt
Carolyn V. Grady
Assistant Federal Public Defenders
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Fran_Pratt@fd.org
Carolyn_Grady@fd.org

# **TABLE OF CONTENTS**

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Nature of the Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      A.    Mr. Falte, His Offense Conduct, and the Resulting Federal Charge
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

      B.    The Plea Colloquy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

      C.    The Presentence Report and the Parties' Positions.. . . . . . . . . . .  12

      D.    The Sentencing Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

I.    Mr. Falte's Guilty Plea and Ensuing Conviction Were Fundamentally
    Flawed When the District Court Failed to Ensure That Mr. Falte Had
    Made a Fully Knowing and Voluntary Decision to Give up His Right to
    Go to Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

      A.    Standard of Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

      B.    The District Court Committed Plain Error in Accepting Mr.
         Falte's Guilty Plea When the Court Failed to Ensure That Mr.
         Falte Understood All of the Trial Rights He Waived by Pleading
         Guilty.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

i

II.   The Sentence of Life Imprisonment Imposed by the District Court Is Both Procedurally and Substantively Unreasonable in Light of the Statutory Sentencing Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    A.   Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    B.   The Imposition of a Life Sentence Is Procedurally Unreasonable When the Court Based the Sentence on Inferences Not Supported by the Record, When Much of the Court's Explanation Could Apply to Any Case, and When the Court Did Not Adequately Explain Why It Was Rejecting Both Sides' Motions for Variance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    C.   The Life Sentence Is Substantively Unreasonable Where Mr. Falte Received a Longer Sentence Than Offenders With Equally Serious or More Egregious Offenses. . . . . . . . . . . . . . . . . . . . . . . . 41

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Certificate of Compliance

Certificate of Service

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anders v. California*, 386 U.S. 738 (1967).. . . . . . . . . . . . . . . . . . . . . . 1, 2, 30, 45

*Boykin v. Alabama*, 395 U.S. 238 (1969). . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gall v. United States*, 552 U.S. 38 (2007).. . . . . . . . . . . . . . . . . . . . 32, 33, 34, 35

*Harmelin v. Michigan*, 591 U.S. 957 (1991). . . . . . . . . . . . . . . . . . . . . . . 30

*Jackson v. Denno*, 378 U.S. 368 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012). . . . . . . . . . . . . . . . . . . . . . . . . 29

*McCarthy v. United States*, 394 U.S. 459 (1969). . . . . . . . . . . . . . . . . . . . . 25

*Missouri v. Frye,* 132 S. Ct. 1399 (2012). . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rita v. United States*, 551 U.S. 338 (2007). . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Antonio-Margarito*, 4th Cir. No. 13-4091. . . . . . . . . . . . . . . . 39

*United Sates v. Blue*, 877 F.3d 513 (4th Cir. 2017). . . . . . . . . . . . . . . . . . . 39

*United States v. Booker*, 543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010). . . . . . . . . . . . . . . . . 33-34

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009). . . . . . . . . 23, 31, 34, 35, 41

*United States v. Coley*, 4th Cir. No. 15-4087. . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Colwell*, E.D. Va. No. 2:11-cr-182-RBS. . . . . . . . . . . . . . . . 44

*United States v. Covington*, 4th Cir. No. 13-4851. . . . . . . . . . . . . . . . . . . . 39

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004). . . . . . . . . . . . . . . . . . . 24

*United States v. Faulkner*, E.D. Va. No. 3:17-cr-045-JAG. . . . . . . . . . . . . . . . . . 5

*United States v. Faulkner*, 4th Cir. No. 17-4621. . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Hix*, E.D. Va. 1:16-mj-00450-TCB.. . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . 33

*United States v. Hurlbut*, E.D. Va. No. 1:11-cr-292-TSE. . . . . . . . . . . . . . . . . . 43

*United States v. Johnson*, 4th Cir. No. 11-4785. . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Lewis*, 606 F.3d 193 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . 32-33

*United States v. Lorence*, E.D. Va. No. 1:13C-cr-475-JCC. . . . . . . . . . . . . . . . . 43

*United States v. Louthian*, 756 F.3d 295 (4th Cir. 2014). . . . . . . . . . . . . . . . 33, 41

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010). . . . . . . . . . . . . . 31, 32, 34, 35

*United States v. Manring*, E.D. Va. No. 1:13-cr-13-CMH.. . . . . . . . . . . . . . . . . 44

*United States v. Martinez*, 277 F.3d 517 (4th Cir. 2002). . . . . . . . . . . . . . . . 24, 25

*United States v. McCoy*, 804 F.3d 349 (4th Cir. 2015).. . . . . . . . . . . . . . . . . . . . 40

*United States v. Mendoza-Mendoza*, 597 F.3d 212 (4th Cir. 2010). . . . . . . . . . . . 33

*United States v. Montes-Pineda*, 445 F.3d 375 (4th Cir. 2006). . . . . . . . . . . 34, 40

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Rivera-Santana*, 668 F.3d 95 (4th Cir. 2012).. . . . . . . . . 31, 32, 33

*United States v. Sanya*, 774 F.3d 812 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . . 24

*United States v. Slappy*, 872 F.3d 202 (4th Cir. 2017). . . . . . . . . . . . . . . . . . 39-40

iv

*United States v. Vinson*, 852 F.3d 333 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . 33, 41

*United States v. Vonn*, 535 U.S. 55 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Wilson*, 81 F.3d 1300 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 26

### Statutes and Rules

18 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 39, 42, 44

18 U.S.C. § 2246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Crim. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26, 27, 28, 29

Va. Code § 18.2-67.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### United States Sentencing Guidelines

U.S.S.G. § 1B1.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 2A3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 43

U.S.S.G. § 2G2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 42

U.S.S.G. § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

U.S.S.G. § 4B1.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

U.S.S.G. ch. 5, pt. A (sentencing table). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 6A1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S.S.G. app. C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Other Authority</u>

Federal Judicial Center, *Benchbook for U.S. District Court Judges*
    (6th ed. Mar. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

No. 17-4630

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

PATRICK FALTE,
*Defendant/Appellant*.

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. John A. Gibney, Jr.)

BRIEF OF THE APPELLANT

## **<u>NATURE OF THE BRIEF</u>**

This brief is submitted to the Court pursuant to the holding of *Anders v. California*, 386 U.S. 738 (1967). Counsel for the appellant have carefully reviewed the record and have not found any grounds for appeal that they perceive to be meritorious. Counsel have set forth below the only arguments that they believe presents any arguable bases for relief, and the factual bases supporting the arguments.

1

Should the Court, after its own review of the record, determine that briefing on additional issues is necessary, counsel stand ready to provide that briefing.

Undersigned counsel Frances H. Pratt has advised the appellant in writing of the nature of this brief and has informed him that the Court will give him the opportunity to file his own brief, as indicated by the statement submitted separately. Counsel has also served a copy of this brief upon the appellant, as indicated in the certificate of service for the brief and in the statement.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. That court entered the judgment of conviction and sentence on September 19, 2017. J.A. 5, 134.[1] Patrick Dane Falte timely filed his notice of appeal on October 3, 2017. J.A. 5, 140; *see* Fed. R. App. P. 4(b)(1), (b)(6). Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[1] Although a joint appendix is not required in an *Anders* case because the Court must review the entire record below, *see* ECF Doc. 11, at 2 (briefing order, *Anders* procedures), counsel have prepared (at their office's expense) and filed an appendix containing the record documents most frequently referenced in this brief, both for the Court's convenience and for that of Mr. Falte and his counsel.

2

## STATEMENT OF THE ISSUES

I.    Was Mr. Falte's plea hearing fundamentally flawed when the district court failed to ensure that Mr. Falte had made a fully knowing and voluntary decision to waive his right to trial, with its attendant rights, in order to plead guilty?

II.    Was the district court's imposition of a life sentence procedurally or substantively unreasonable in light of the statutory sentencing factors?

## STATEMENT OF THE CASE

A.    Mr. Falte, His Offense Conduct, and the Resulting Federal Charge

1.    Patrick Dane Falte is a 28-year-old man who has been tortured by his thoughts since he was a young child.  Mr. Falte comes from a good family, has never been married (indeed he has never really had a girlfriend or close companion), has no children, and has lived with his parents for nearly all his life.  J.A. 159-60.  After persevering through school with a learning disability, childhood depression issues, and pain from a serious medical condition (Crohn's disease, diagnosed when Mr. Falte was eighteen and now in an advanced stage), Mr. Falte graduated from high school and attended ITT Tech, from which he obtained a bachelor's degree that helped him obtain a good well-paying job.  J.A. 160, 164.

Even though Mr. Falte appears to have been reasonably successful in life, he is a troubled young man, as evidenced by his wish to die when he was only eight

3

years old.  *See* J.A. 77.  (In fact, he has probably been clinically depressed for most of his life.  *See* J.A. 76.)  Adding to his already complicated and painful background, as he was about to enter his teen years, Mr. Falte was sexually victimized by an adult male but never felt able to speak about the pain it caused him until recently.  J.A. 162.  He was never able to process the pain, the shame, the anger, or the emotions associated with that violent act and how it harmed his psyche.

Mr. Falte first tried to kill himself when he was nineteen, likely related to his growing concern that "I aged but my attraction [to children] may not have."  J.A. 162; *see* J.A. 77.[2]  But he did not accept any treatment for his mental and emotional pain, as he was aware of the stigma attached to the pedophilic interests he had, and he was fearful of the consequences.  *See* J.A. 77-78, 163.  As a teenager, he also engaged in "cutting" himself, in an effort to release internal pain while at the same time inflicting physical pain.  J.A. 162, 163; *see* J.A. 78.  More recently, Mr. Falte also tried to numb his unwanted feelings through alcohol abuse or abuse of the pain medications he was prescribed for his serious medical issues.  J.A. 163.

In sum, in the years leading up to his offense and the resulting prosecution, Mr. Falte has been a young adult whose life has been dominated by self-loathing over what was going on inside his head.  He hated himself for not outgrowing his

---

[2]  Mr. Falte also tried to kill himself while he was awaiting sentencing in this case, motivated again by self-loathing and fear.  J.A. 163; *see* J.A. 78.

attraction to children and could find no way to deal with that intense self-loathing. *See* J.A. 78. He has had suicidal ideations on and off for many years. *Id.* He tried to kill himself about seven years before his conduct in this case, and again while awaiting sentencing. His self-hatred, coupled with major depression, has permeated his life.[3]

2.    Unable to contain his interest in young children despite its damaging effect on his well-being, Mr. Falte became involved in the administration of a website devoted to the advertising and distribution of child pornography. *See* J.A. 151. Through the site, he met Benjamin Faulker,[4] another site administrator, and Thomas Gene Hix, a user of the site. J.A. 152. Sometime in 2015, Hix offered the men his young daughter for their sexual gratification. J.A. 65, 168. Mr. Falte traveled three times from near Nashville, Tennessee, to Manassas Park, Virginia, to visit Hix and

---

[3]  Notwithstanding his mental health challenges, including pedophilia, Mr. Falte is not irredeemable. To the contrary, his lack of defensiveness about his situation and his willingness to engage in treatment bode well for him. Mr. Falte is not anti-social, nor is he psychopathic, but rather is on the autism spectrum disorder and has struggled with depression most of his life. In short, he does not present a high risk of reoffending, and he is amenable to sex offender treatment to further reduce his risk upon his release. *See* J.A. 78.

[4]  Faulker was also prosecuted in the Eastern District of Virginia. *See United States v. Faulkner*, E.D. Va. No. 3:17-cr-045; *United States v. Faulkner*, 4th Cir. No. 17-4621. Even before their arrests in this case, Mr. Falte and Faulkner were being investigated by federal law enforcement agents for their roles in the website, and are presently facing prosecution in the Middle District of Tennessee based on their activities involving the website. J.A. 151-52.

5

his daughter, first in December of 2015 and then again in mid-January and the very beginning of October in 2016.  J.A. 152-54.  While Faulkner joined Mr. Falte for the second and third visits, Faulkner also visited three additional times without Mr. Falte. *Id.*

The men photographed the abuse during the January visit, which included oral sex and anal penetration, and posted the photographs to the website they administered.  During the October visit, the men videoed Mr. Falte ejaculating on the girl.  J.A. 153-54.  It is not clear that the video was ever posted.  However, Hix (the child's father) had previously posted pornographic photographs of his daughter on the website.  J.A. 152-53.[5]

Nothing in the record below even hints or suggests, much less demonstrates, that Mr. Falte has ever abused any other child.

3.    Just four days after the last visit, on October 4, 2016, federal agents filed a criminal complaint in the Eastern District of Virginia seeking Mr. Falte's arrest for aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c), on the basis of crossing state lines with intent to engage in a sexual act with a person less than 12

---

[5]  For his role in the October 1, 2016, visit, Hix pled guilty in Prince William Circuit Court to "object sexual penetration," Va. Code § 18.2-67.2, and was sentenced to fifty years with forty years suspended – i.e., ten years of active time – and ten years of supervised probation.  *See* http://ewsocis1.courts.state.va.us/CJISWeb/circuit.jsp (last visited Feb. 12, 2018).  His federal case based on the October visit was dismissed without prejudice.  *See United States v. Hix*, E.D. Va. 1:16-mj-00450-TCB.

years old. J.A. 3 (docket entry 4).[6] Mr. Falte was brought before a federal magistrate judge for an initial appearance the same day. J.A. 3 (docket entry 11). Three days later, when he was brought again before the magistrate judge for detention and preliminary hearings, Mr. Falte waived his rights to both hearings. J.A. 3 (docket entries 14, 18). He was detained pending trial. J.A. 3 (docket entries 14, 22).

Seven months later, on May 4, 2017, the government filed a criminal information alleging that

> [o]n or about September 30, 2016, in [the] Eastern District of Virginia and elsewhere, the defendant, PATRICK FALTE, did cross a State line with intent to engage in a sexual act, as defined in 18 U.S.C. § 2246(2), with a person who has not attained the age of 12 years.
>
> (All in violation of Title 18, United States Code, Section 2241(c).)

J.A. 6.[7] On May 5, the district court scheduled a change-of-plea hearing for May 10. J.A. 4 (docket entry dated May 5, 2017).

---

[6] Mr. Falte had actually been arrested the previous day on a complaint arising from the investigation in the Middle District of Tennessee referenced above. J.A. 2 (docket entries 1, 3). The government dismissed that complaint at the time Mr. Falte made his initial appearance on the complaint filed in the Eastern District of Virginia. J.A. 3 (docket entry 11).

[7] The criminal information was filed long after the expiration of the 30-day period specified in 18 U.S.C. § 3161(b) (requiring that indictment or information be filed within 30 days of arrest). However, as defense counsel explained at sentencing, Mr. Falte "willingly waited and waived a number of speedy trial rights to figure out the right kind of charge" with the government. J.A. 119.

B.    The Plea Colloquy

At the outset of the plea hearing, the district court placed Mr. Falte under oath and advised him of the consequences of making any false statement during the hearing. J.A. 10-11. The court inquired about Mr. Falte's age (27), education (bachelor's degree from ITT Tech), and ability to read, write, and understand the English language. J.A. 10; *see* J.A. 149. The court also questioned Mr. Falte about his then-current state of physical and mental health. J.A. 12-15. The court learned from that line of questioning that Mr. Falte had tried to hurt himself about six weeks earlier, and had been prescribed an anti-depressant afterward. J.A. 12-13, 14. Mr. Falte had no substance abuse issues. J.A. 15-16.

Having satisfied itself that Mr. Falte was competent to enter a guilty plea, the court questioned him about his waiver of his right to indictment. J.A. 16-18. The court also queried Mr. Falte about his relationship with his attorney. J.A. 18-19. The court then briefly asked Mr. Falte about the plea agreement and whether a signature on the documents was in fact his. J.A. 21. The court did the same with the statement of facts, although the court also described what the statement provided and asked Mr. Falte if he was aware of what was in the statement and whether his counsel had gone over it with him. J.A. 21-23. The court then stated, "I am going to accept the guilty plea and the statement of facts. J.A. 23.

8

Only after accepting Mr. Falte's plea of guilty did the court ask Mr. Falte about the plea agreement in any detail. J.A. 24. The court first asked Mr. Falte if the plea agreement was the complete agreement that he had with the government or if there were any other agreements. J.A. 24.[8] Continuing, the court asked Mr. Falte if anyone had promised him anything, other than what was in the plea agreement, or threatened him (other than with continued prosecution). Mr. Falte answered "no" to the court's questions. J.A. 24, 26. The court also asked Mr. Falte if he was pleading guilty of his own free will and because he believed it in his best interest to do so. The court then cautioned Mr. Falte that he could not change his plea if the court gave him a harsher sentence than he anticipated. J.A. 26.

The court turned next to questioning Mr. Falte about his understanding of the penalties for the offense: a maximum of life imprisonment, a statutory mandatory minimum of thirty years, a term of supervised release of at least five years up to life, a fine of up to $250,000, a special assessment of $100, restitution, and sex offender registration. J.A. 27-29.[9] After reviewing the statutory penalties, the court described

_____

[8] The government interrupted at this point to explain that the plea agreement pertained only to Mr. Falte's prosecution in the Eastern District of Virginia, and that the agreement had no bearing on the renewed charges that Mr. Falte still faced in the Middle District of Tennessee for different conduct. J.A. 24-25.

[9] Before addressing sentencing matter, the court briefly queried Mr. Falte about the civil rights he would give up as a convicted felon. J.A. 26-27.

the Sentencing Guidelines to Mr. Falte, explaining the role they play and that any estimate given to him by counsel was only an estimate. J.A. 30-31. The court also explained that in addition to the guideline range, as calculated in the presentence report (to which Mr. Falte could object), the court would consider various statutory sentencing factors in order to come up with a sentence that was "adequate but not greater than necessary." J.A. 32-34.[10] After covering sentencing matters, the court returned very briefly to the plea agreement, to ask whether Mr. Falte understood that in the agreement, he had "given up [his] right to appeal any sentence that is within the statutory limits in this case," although the government could still appeal the sentence if it did not like what the court imposed. J.A. 34.[11]

The court then pivoted to asking Mr. Falte about his understanding of the trial rights that he gave up by pleading guilty. J.A. 34-38. More specifically, the court described the right to plead not guilty and go to trial and have the government prove guilt beyond a reasonable doubt; the rights not to have to prove anything, not to testify or call witnesses (because of the presumption of innocence), and not to have anyone comment on his silence. J.A. 35. The court also mentioned the right to

_____

[10] At the very end of the hearing, the court also described briefly how the sentencing hearing would proceed. J.A. 40-41.

[11] The plea agreement contained the standard waiver of appeal required by the U.S. Attorney's Office in the Eastern District of Virginia. *See* J.A. 49.

counsel, the right to subpoena witnesses, and the rights to see, hear, and cross-examine the government's witnesses, and to see the government's documentary evidence. J.A. 36. The court described for Mr. Falte the role of the jury. J.A. 36-37. The court explained that by pleading guilty, Mr. Falte gave up the right to remain silent, and the government could require him to testify. J.A. 37. Finally, the court asked Mr. Falte whether he understood that he was giving up all of his trial rights and there would be no trial. J.A. 38.

Having finished its review of Mr. Falte's trial rights, the court reviewed with Mr. Falte the nature of the offense to which he was pleading guilty. J.A. 38. The court concluded its questioning of Mr. Falte with some general inquiries: whether he had any questions for the court, whether he wanted more time to talk with his counsel, and whether his counsel knew of any reason why the court should not accept Mr. Falte's guilty plea. J.A. 38-39. After having the clerk formally ask Mr. Falte what was his plea, to which he responded, "Guilty," the court made its formal finding that Mr. Falte was competent to enter a guilty plea; that he was aware of the nature of the charge and the consequences of the plea; that his plea was knowingly and voluntarily made; and that it was supported by an independent factual basis for the essential elements of the offense. J.A. 39.

C.     The Presentence Report and the Parties' Written Positions

At the end of the plea hearing, the court set the sentencing hearing for September 26, 2017. J.A. 4 (docket entry 46); J.A. 42-43. Three weeks later, the court moved the hearing up by eleven days, to September 15. J.A. 4 (docket entry dated June 2, 2017). The probation officer disclosed the initial presentence report on August 11, 35 days in advance of sentencing. J.A. 4 (docket entry 51); *see* U.S.S.G. § 6A1.2(a). The final report issued fifteen days in advance of sentencing. J.A. 4-5 (docket entries 58, 66); J.A. 147.

1.     In calculating the offense level, the probation officer began with U.S.S.G. § 2A3.1, the primary guideline for criminal sexual abuse, but applied a cross-reference in that guideline to U.S.S.G. § 2G2.1 because the offense involved engaging a minor in sexually explicit conduct for the purpose of producing images of the conduct. J.A. 155; *see* J.A. 153, 154. Applying § 2G2.1, the probation officer started with base offense level 32, to which she added points for several enhancements: four points because the offense involved a minor less than twelve years old, U.S.S.G. § 2G2.1(b)(1); two points because the offense involved sexual acts, U.S.S.G. § 2G2.1(b)(2)(A); two points because Mr. Falte knowingly engaged in distribution, U.S.S.G. § 2G2.1(b)(3); and two points because the offense involved

12

the use of a computer, U.S.S.G. § 2G2.1(b)(6)(B).  J.A. 155-56.[12]  The adjusted

offense level came to 42.  *Id.*  The probation officer then adjusted the offense level

up by five points because Mr. Falte had engaged in a pattern of activity involving

prohibited sexual conduct.  J.A. 156; *see* U.S.S.G. § 4B1.5(b).  Because Mr. Falte had

fully and timely accepted responsibility for his offense, however, the probation officer

reduced the offense level from 47 to 44, which was capped at 43.  J.A. 156; *see* J.A.

61 (government motion for third point); U.S.S.G. § 3E1.1; U.S.S.G. ch. 5, pt. A.

comment. (n.2) (sentencing table).

   With respect to Mr. Falte's criminal history, he had none at all, neither juvenile

adjudications nor adult convictions.  J.A. 158.  The only time that he had even been

arrested (other than for conduct relating to this case), was in December 2014, for

driving without a license.  J.A. 159.  Accordingly, the probation officer calculated a

---

[12]  Because the sentencing hearing was scheduled for September 2017, the
probation officer applied the 2016 edition of the Sentencing Guidelines Manual,
which took effect on November 1, 2016.  J.A. 155; *see* U.S.S.G. § 1B1.11.  The
conduct deemed to be relevant occurred between January and October 2016.  J.A.
150-54.  The Sentencing Commission, however, amended § 2G2.1 effective Nov. 1,
2016.  *See* U.S.S.G. app. C, amend. 801.  The presentence report applied the new
version of § 2G2.1(b)(3), which requires that "the defendant knowingly engage in
distribution," which has a more limited scope than the enhancement previously had,
due to the change in language to active voice (more limited) from passive voice
(broader).  J.A. 156.  The presentence report, however, did not apply a new four-level
enhancement in § 2G2.1(b)(4) for the victim being an infant or toddler.

13

total of zero criminal history points, which placed Mr. Falte in criminal history category I.  J.A. 158.

Based on a final offense level of 43 and criminal history category of I, Mr. Falte's advisory guideline range was life imprisonment.  J.A. 165.  Neither party objected to the guideline range calculations.  J.A. 64, 723, 104, 167.[13]

2.     Each side filed a written sentencing position.  The government's relatively brief position papers requested a sentence of fifty years.  J.A. 64-69, 143-45.  The defense's lengthier position paper requested a sentence of thirty years, the statutory mandatory minimum, and opposing government's request as more than a de facto life sentence.  J.A. 72-101 (defense's seventeen-page memo, accompanied by letters from Mr. Falte's mother and sister and from his doctor, and article from *Psychology Today* addressing how the stigma attached to child sexual abusers makes it difficult to understand the subject and for potential offenders to seek help).

---

[13] Had § 2A3.1 been applied without the cross-reference, the base offense level would have been 38, U.S.S.G. § 2A3.1(a)(a), with two points added for use of a computer, U.S.S.G. § 2A3.1(b)(6)(2), five points added for a pattern of activity, U.S.S.G. § 4B1.5, and three points subtracted for acceptance of responsibility, U.S.S.G. § 3E1.1.  The final offense level of 42, when combined with criminal history category I, would have yielded an advisory range of 360 months to life imprisonment.

D.    The Sentencing Hearing

1.    At the sentencing hearing, the court made sure that Mr. Falte had reviewed and discussed the presentence report with his attorney.  J.A. 104.  Upon hearing that there were no changes to it, the court adopted the report's guideline range calculations and acknowledged that the "range" of life imprisonment was "advisory only."  J.A. 105.

The court next noted that it had received several letters from Mr. Falte's family, along with one from Mr. Falte himself in which he "expresse[d] his regret over the offense and the fact that he understands how he harmed the child in this case."  J.A. 105-06.  The court also noted that it had received statements from the mother and grandmother of the child, which discussed the "horrible effect of Mr. Falte's and Mr. Faulkner's actions" on her.  J.A. 106; *see* J.A. 168 (victim impact statement provided by victim's mother, which holds victim's father as responsible as Mr. Falte for the harm suffered by victim).

The court then heard brief testimony from Mr. Falte's father, who explained that he came to support his son and to tell the court about the positive sides to him.  J.A. 108-09.  The court thanked Mr. Falte's parents for coming to the hearing, and acknowledged that "[t]his is, obviously, not a good day in your life, or in [Dane's] life."  J.A. 110.

15

2.    In its argument, the government reiterated its request for a fifty-year sentence.  J.A. 111-15.  Much of its argument centered on the defense's request for a thirty-year sentence, asserting that such a sentence (the statutory mandatory minimum) would not satisfy the § 3553(a) factors, and in particular, the need to protect the public from the risk posed by Mr. Falte upon his release.  J.A. 112-14. Accordingly, the government urged the court to impose a fifty-year sentence because, "based on the information provided in our sealed pleadings [Mr. Falte] does deserve some hope of ultimate release."  J.A. 115; *see* J.A. 143-45.

Defense counsel began her argument by rebutting the government's concerns about the risk that Mr. Falte would pose if released in only thirty, rather than fifty, years, given how strict the conditions of his supervised release will be.  J.A. 115-16. As well, counsel contended, a thirty-year sentence would be more difficult for Mr. Falte to serve as compared to other offenders, given his medical condition and his physical condition, which put him at risk of becoming a victim himself.  J.A. 118-19. Further, counsel argued, the court needed to consider Mr. Falte's relative culpability given his role in the offense, as compared to Faulkner and Hix.  J.A. 120.  Stressing Mr. Falte's desire for treatment, counsel asked the court to impose thirty years to give Mr. Falte some hope, rather than "warehousing" Mr. Falte for the additional twenty years requested by the government.  J.A. 121-22; *see* J.A. 117.  After asking the court to include a recommendation for the Bureau of Prisons to place Mr. Falte in a medical

16

facility, counsel closed her argument by asking the court again to impose a thirty-year

sentence because "this [is] not about vengeance, this is about justice. And sometimes

justice needs to be tempered with mercy[.]" J.A. 123.

After hearing from counsel, the court let Mr. Falte know that it had read the

letter he had submitted, and that it would be glad to hear more from him. J.A. 123;

*see* J.A. 105. Mr. Falte took the opportunity:

> I just, you know, I just want to go over what I said in my
> letter. I do apologize. It is – when I was doing what I was
> doing, you know, back then, I didn't see it as awful,
> otherwise I would have never. The last thing on earth that
> I would ever want to do is hurt anybody. So, I mean, I'm
> here today, yes I did. You know it destroys me. So, I just
> want to apologize to you, to the family, and the girl I hurt.
> Just everybody.

J.A. 124.[14]

3.    Having heard from both counsel and Mr. Falte, the court turned to

reviewing the factors it was required to consider by 18 U.S.C. § 3553(a) when

imposing sentence. With respect to the nature and circumstances of the offense, the

court understandably found it "just terrible" and "horrible." J.A. 124. The court

---

[14]   As counsel noted in her written sentencing position, to the extent that Mr.
Falte may have come across in his allocution as "flat" or having "a deadpan
communication style," in fact he has strong emotional reactions that he does not
convey outwardly. "Thus, he may appear unconcerned or emotionally neutral when
he is in fact distressed." J.A. 78-79; *see* J.A. 126 (court's comment on Mr. Falte's
affect at plea hearing).

17

stressed Mr. Falte's use of the "dark web" even though he was not charged with using it to commit the offense. J.A. 124. The court also appeared to believe that Mr. Falte had actively solicited Thomas Hix to allow him to abuse Hix's daughter, even though nothing in the record suggests that to be the case. *Compare* J.A. 124-25 (court's statement that "[h]e was able to arrange through the internet the ability to find someone who would essentially lend his daughter to him for sexual purposes") *with* J.A. 65 (government's position that "Mr. Hix offered the defendant and Mr. Faulkner the use of a four-year-old child for their sexual gratification") *and* J.A. 168 (victim's father brought two other men into victim's life to abuse her).

Reviewing Mr. Falte's history and characteristics, the court only briefly acknowledged the difficulties Mr. Falte had in school, his need for treatment of his Crohn's disease, and the issues caused by his depression and pedophilia. According to the court, "if I had to sum him up, he obviously has some good sides, but there is a horrible and thoughtless part of his character that manifests itself in the conduct that is unacceptable and awful." J.A. 126. The court did not, however, give any indication that it believed Mr. Falte to be irredeemably evil.

Turning next to the purposes of sentencing required to be reflected by the sentence it selected, the court stated that as to the seriousness of the offense, "If [Mr. Falte] killed this girl, she wouldn't live in torture for the rest of her life. But he didn't, and so she is the one who has a life sentence in this case." J.A. 127. As to

respect for the law, the court believed that "honestly there is absolutely none shown by Mr. Falte here. He lived and worked – he lived and worked in the evil part of the web. Traveled all around the country on numerous occasions, all to [sic] for the purpose of victimizing this child." J.A. 127. (In fact, Mr. Falte had no criminal record whatsoever, J.A. 158-59, and traveled a total of three times from the Nashville area to the northern Virginia area, J.A. 155.)

Addressing just punishment, the court commented only, "Well, the guidelines make it clear and the sentencing statute makes it clear by establishing a mandatory minimum that severe punishment is called for here." J.A. 127. As to deterrence, the court recognized that whatever sentence it imposed on Mr. Falte would not likely deter anyone else, but the court was "sure" that the sentence would be an adequate deterrence to Mr. Falte because its length would keep him "out of circulation for a long time." J.A. 127-28.

Considering the need to protect the public from Mr. Falte in the future, in the court's view, "of all of the 3553 factors, the nature and circumstances of the offense and the need to protect the public are clearly the most important. It is just unconscionable to put Mr. Falte in a place to do anything like this again." J.A. 128. The court also commented that "the likelihood of recidivism in three to five years is, I don't know, something like three to five percent. Well, you know, that means one out of every 20 people does something. That is pretty dangerous." *Id.*

19

Turning next to the need for the sentence to help with rehabilitation (i.e., to provided education, vocational training, medical care and other treatment), the court observed simply that "I am going to take care of the medical care for his Crohn's, and I don't think the other factors play into this very much." The court did not mention Mr. Falte's need for treatment for his depression and pedophilia.

As to the kinds of sentences available, the court simply acknowledged the statutory mandatory minimum of thirty years and the Sentencing Guidelines' recommendation of life. J.A. 128-29. And as to the need to avoid disparity among similarly situated defendants, the court commented only that "anybody who gets convicted under this statute is going away for a long time." J.A. 129. As to the last statutory factor, the need for restitution, the court relied on the government's representation that the victim's family did not intend to seek any. J.A. 129.

Before announcing its sentence, the court cursorily addressed each side's requests for sentence (fifty years by the government, thirty (or forty) years by the defense). The court said only, "I think the other factors in the case outweigh the motion for variance, and that motion will be denied." J.A. 129-30. The court then sentenced Mr. Falte to a term of life imprisonment, to be followed by a term of supervised release for life should he ever be released from prison. J.A. 130, 131.

4.    After imposing its sentence of life imprisonment, the court advised Mr. Falte about his right to appeal that sentence:

20

> Mr. Falte, you have 14 days to appeal this sentence to the U.S. Court of Appeals for the Fourth Circuit. You do that by filing a notice of appeal, which Ms Grady will do if you ask her to do it. . . . If you can't [get] ahold of Ms Grady, send a letter to the clerk of this court saying you want to appeal.

J.A. 131-32. The court did not remind Mr. Falte that he had agreed in his plea agreement to waive his right to appeal his sentence, and the government did not ask the court to remind Mr. Falte about the waiver.

Before remanding Mr. Falte, the court added, "Mr. Falte, this is – I have wrestled with this case since the first day I met you. And it just makes me sick. The whole thing is sad for everybody involved, for you, your parents, for the victims, for the lawyers." J.A. 132. Continuing, the court told Mr. Falte,

> I don't know what your life is going to be like going forward from here. You [are] going to find the ability to put one step in front of the other as you go through the rest of your life. You are going to be in prison and going to be there with a lot of people who don't have the intelligence and education and skills that you have.

*Id.* The court hoped for Mr. Falte that he "will find it within yourself at some stage to try to help those people to move on, to help them find meaning to their lives so that they can at the end of their sentences move on to a better life," and that he "can find a way to be a servant to others while you are in prison." *Id.* Before remanding Mr. Falte into custody, the court arranged with the Marshals for him"to be able to have

a few moments to talk with your parents here in the courtroom before you leave."
"God bless you," the court told Mr. Falte before recessing court. *Id.*

The district court's written judgment, filed four days after sentencing, J.A. 5, conformed to the court's oral pronouncement of the sentence. *Compare* J.A. 130-31 *with* J.A. 135-39. Mr. Falte filed his notice of appeal fourteen days after the entry of the judgment. J.A. 5, 140.

## SUMMARY OF ARGUMENT

I.     It is well-established that a criminal defendant's plea of guilt to the charges against him must be knowingly and voluntarily made. A plea is not knowingly and voluntarily made, however, when the defendant does not have an understanding of the law of the offense in relation to the facts of his case. Likewise, a plea is not knowingly and voluntarily made where the defendant does not have an understanding of the constitutional trial rights he waives by pleading guilty. Further, a plea is not voluntarily entered if the defendant was forced or threatened into it. Thus, before a federal judge can accept a guilty plea, Rule 11 of the Federal Rules of Criminal Procedures requires the judge to personally inquire of the defendant, in open court, about his understanding of the nature of the offense and the rights he waives, and ensure that the defendant was not forced or threatened into pleading guilty.

The district court in Mr. Falte's case failed to fulfill its obligation to ensure that Mr. Falte entered a knowing and voluntary plea, albeit without objection. More particularly, the court failed to ask Mr. Falte whether he understood certain of the key constitutional trial rights he was waiving, specifically his right to present his own case (including his own testimony). Further, the court failed to ensure that Mr. Falte had been made aware of all plea offers from the government. In light of these failings, the court committed plain error. However, because counsel cannot demonstrate that Mr. Falte's substantial rights were affected (i.e., that he would have gone to trial but for the court's failure to make all required inquiries), this Court need not vacate Mr. Falte's conviction and remand for further proceedings.

II.     The sentence of life imprisonment that the district court imposed upon Mr. Falte is both procedurally and substantively unreasonable. As to the sentence's procedural unreasonableness, the court failed to provide a sufficient explanation, in violation of 18 U.S.C. § 3553(c) and this Court's precedent in *United States v. Carter*, 564 F.3d 325 (4th Cir. 2009), and other cases, for its imposition of life imprisonment rather than the thirty-year mandatory minimum sentence Mr. Falte requested, or even the fifty-year sentence requested by the government. Accordingly, this Court must vacate the procedurally unreasonable sentence and remand the case for resentencing.

Even if this Court were to find the district court's explanation sufficient, however, the sentence is nonetheless substantively unreasonable. In particular, the

23

sentence is substantively unreasonable when measured against the factors in 18 U.S.C. § 3553(a) because it creates unwarranted disparity when viewed alongside other cases in the same district involving equally or even more egregious conduct. This demonstrable disparity undermines the appropriateness of the sentence in reflecting the seriousness of the offense, promoting respect for the law, and, in short, providing just punishment. Because the sentence is substantively unreasonable when measured by the § 3553(a) factors, this Court must vacate it and remand for resentencing.

## **ARGUMENT**

I.     MR. FALTE'S GUILTY PLEA AND ENSUING CONVICTION WERE FUNDAMENTALLY FLAWED WHEN THE DISTRICT COURT FAILED TO ENSURE THAT MR. FALTE HAD MADE A FULLY KNOWING AND VOLUNTARY DECISION TO GIVE UP HIS RIGHT TO GO TO TRIAL

A.     <u>Standard of Review</u>

Because Mr. Falte did not seek to withdraw his plea below, and no objection was otherwise raised below to the validity of his guilty plea proceeding, this Court reviews the district court's handling of the plea for plain error. *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004); *United States v. Vonn*, 535 U.S. 55, 59-60 (2002); *United States v. Sanya*, 774 F.3d 812, 815 (4th Cir. 2014); *United States v. Martinez*, 277 F.3d 517, 524 (4th Cir. 2002). Accordingly, Mr. Falte must

24

demonstrate that the district court committed error that was plain and that affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993), *cited by Martinez*, 277 F.3d at 524. In the guilty plea context, a defendant establishes that an error affected his substantial rights if he demonstrates a reasonable probability that he would not have pleaded guilty but for the error. *Sanya*, 774 F.3d at 816. This Court may exercise its discretion to correct the error if the Court finds that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (alteration in original, internal quotations omitted).

B.   The District Court Committed Plain Error in Accepting Mr. Falte's Guilty Plea When the Court Failed to Ensure That Mr. Falte Understood All of the Trial Rights He Waived by Pleading Guilty

1.   "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). This is because "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction . . . ." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). As a form of confession, however, a guilty plea "must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.'" *Id.* (quoting *Jackson v. Denno*, 378 U.S. 368, 387 (1964)). Further, "because a guilty

25

plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 466.  To these ends, this Court has explained that a core purpose of the guilty plea colloquy "is to guarantee that the defendant understands the nature of the charges against him so that he can knowingly and voluntarily agree to plead guilty, rather than face the risk of a reasonable jury finding . . . ." *United States v. Wilson*, 81 F.3d 1300, 1309 (4th Cir. 1996).

In keeping with these constitutional principles, Rule 11 of the Federal Rules of Criminal Procedure requires that, in open court, a court must directly address a defendant who seeks to enter a guilty plea, to ensure that the defendant is making a knowing and voluntary decision to plead guilty.[15]  More specifically, the court must determine that the defendant understands the following: the nature of the charge against him; any mandatory minimum sentence; the maximum possible sentence, including imprisonment, fine, and term of supervised release; the mandatory special assessment; the applicability of the United States Sentencing Guidelines and their advisory nature; his right to an attorney at all stages of the proceedings; his right to

---

[15]  "[A]lthough the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary" and is further "intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *McCarthy*, 394 U.S. at 465.

plead not guilty; his right to a jury trial with the assistance of counsel; his right to

confront and cross-examine witnesses; his right to testify on his own behalf as well

as his right against self-incrimination; any waiver provisions in a plea agreement; the

court's authority to order restitution; any applicable forfeiture; and the government's

right to use any of his statements under oath in a perjury prosecution. *See* Fed. R.

Crim. P. 11(b)(1). The court must also inform the defendant that he may not

withdraw his guilty plea once the court accepts it and imposes a sentence. Fed. R.

Crim. P. 11(e). Further, the court must "determine that there is a factual basis for the

plea." Fed. R. Crim. P. 11(b)(3). Finally, the court must ensure the defendant's plea

was not only knowing, but also voluntary and not the result of force, threats, or

promises. Fed. R. Crim. P. 11(b)(2).

2. As relevant to this case, Rule 11(b)(1)(E) requires specifically that "the

court must inform the defendant of, and determine that the defendant understands . . .

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected

from compelled self-incrimination, *to testify and present evidence*, and to compel the

attendance of witnesses" (emphasis added). Typically, a court complies with that

subsection by asking a defendant something along the lines of "do you understand . . .

that you would have . . . the right to see and hear all the witnesses and have them

cross-examined in your defense, the right on your own part to decline to testify unless

you voluntarily elected to do so in your own defense, and the right to compel the

27

attendance of witnesses to testify in your defense?"  Federal Judicial Center, *Benchbook for U.S. District Court Judges* § 2.01, at 70 (6th ed. Mar. 2013).

The district court in this case failed to properly advise Mr. Falte about his right to present evidence at trial and to testify in his own behalf, thus committing error. Moreover, that error is plain, as the language of Rule 11 is clear that the court must inform a defendant of the right "to testify and present evidence."  Fed. R. Crim. P. 11(b)(1)(E).  Accordingly, Mr. Falte has established the first two prongs of the plain error analysis.

As to the third prong of the plain error analysis, however, counsel acknowledge that there is no indication that Mr. Falte's substantial rights were affected by the error. The plea agreement listed the right to testify and present evidence, J.A. 48, and Mr. Falte signed a statement at the end of the agreement indicating in relevant part that he had read the agreement and reviewed every part of it with his counsel, J.A. 56. Further, when asked by the court during his plea colloquy if he had read the agreement and gone over its terms with counsel, he advised the court that he had. J.A. 21.  Finally, Mr. Falte did not move to withdraw his plea on the basis that he desired to present any defense at trial.[16]

---

[16]  However, the court did not ask Mr. Falte, as other judges in the district do, specifically whether he had discussed possible defenses with his counsel (as opposed to the case generally, and the government's evidence more particularly).  Nor did the
(continued...)

3.    Counsel also note that although not specifically enumerated in Rule 11, the district court failed to inquire of Mr. Falte or counsel for either side if there had been any plea offers other than the one in the agreement presented to the court. *See Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Missouri v. Frye,* 132 S. Ct. 1399 (2012). Moreover, the district failed to ask Mr. Falte whether he understood that he could not withdraw his plea if the court failed to follow the government's promised recommendation for a sentence. *See* Fed. R. Crim. P. 11(c)(3)(B) ("To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request" for a particular sentence or sentencing range. (The closest the court came was to complying with the requirement was when it advised Mr. Falte that "the fact that the government might recommend 50 years is not binding on me." J.A. 20; *cf.* J.A. 26 (asking Mr. Falte if he understood that "if I give you a harsher sentence than you anticipate, you cannot change your plea of guilty to not guilty").)

In sum, the record of the plea colloquy permits the Court to find that the district court substantially complied with the requirements of Rule 11 when accepting Mr.

---

[16]  (...continued)
court ask counsel if she was satisfied that there were no meritorious defenses to be made to the charge that could result in a "not guilty" verdict.

Falte's plea, and to the extent that the court failed to comply, that the lack of compliance did not affect Mr. Falte's substantial rights. Accordingly, on plain error review, counsel believe themselves unable to establish that this Court should vacate Mr. Falte's conviction.

## II. THE SENTENCE OF LIFE IMPRISONMENT IMPOSED BY THE DISTRICT COURT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE IN LIGHT OF THE STATUTORY SENTENCING FACTORS

In the event that the Court finds Mr. Falte's conviction to be sound notwithstanding the plain error committed by the district court when taking Mr. Falte's guilty plea, then the Court must consider the reasonableness of the life sentence imposed by the court on Mr. Falte.[17]

A sentence of life imprisonment is "the second most severe penalty permitted by law," *Harmelin v. Michigan*, 591 U.S. 957, 1001 (1991), was the most severe punishment permitted in this case, and is typically reserved for cases involving death (usually murder). As such, federal courts should take exceptional care in sentencing defendants to such a severe penalty. Such care is especially warranted in cases in which a defendant – one with no criminal history but with serious physical and mental health conditions – did not kill anyone, has pled guilty and expressed great

---

[17] Counsel have submitted this issue for the Court's review pursuant to *Anders* because of the appeal waiver in Mr. Falte's plea agreement. Counsel otherwise believe that the argument that follows has merit.

remorse for his conduct and the harm he caused, and where even the government recognizes that a sentence less than life imprisonment is warranted.

In imposing a life sentence on Patrick Falte, the district court did not take such care. The sentence is procedurally unreasonable because the court provided an insufficiently individualized explanation of the sentence when the court drew conclusions that were unsupported by the record; when many of its comments could apply to any case; and when the court did not adequately explain why it was rejecting not only the defense request for a thirty-year sentence but also the government's request for a fifty-year sentence. Further, the life sentence is also substantively unreasonable when compared to other cases involving similar or worse conduct. Indeed, the district court's imposition of life imprisonment essentially eliminated any distinction between Mr. Falte's culpability in this case and that of defendants in other cases who engage in similar conduct but have committed previous sex offenses, or do not suffer from mental illness, or do not plead guilty and express remorse, or those whom the government believes warrant a life sentence.

A.    <u>Standard of Review</u>

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), this Court reviews sentences imposed in federal criminal cases for reasonableness. *E.g.*, *United States v. Rivera-Santana*, 668 F.3d 95, 100 (4th Cir. 2012); *United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010); *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

That review involves consideration of two components, one procedural and one substantive. *E.g.*, *Lynn*, 592 F.3d at 575-76. In reviewing for procedural reasonableness, this Court must

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 51 (2007); *see also Rivera-Santana*, 668 F.3d at 100.

Where, as here, the claim of procedural error is preserved, the Court reviews the district court's failure to explain the sentence for an abuse of discretion. *Lynn*, 592 F.3d at 576, 577-78. Mr. Falte preserved his challenge by asking for a sentence lower than he ultimately received, and by arguing for that sentence in light of the § 3553(a) factors. *Id.* at 578 ("By drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments, and thus preserves its claim.").

If the Court determines that a procedural error exists, further review for substantive reasonableness is unnecessary. *See United States v. Lewis*, 606 F.3d 193,

201 (4th Cir. 2010) ("[I]f a sentencing court commits a significant procedural sentencing error[,] . . . our practice is to vacate and remand for resentencing before reviewing the sentence for substantive reasonableness."). But if there are no procedural errors,

> [t]he appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.

*Gall*, 552 U.S. at 51; *see also Rivera-Santana*, 668 F.3d at 100-01; *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010) (examining "the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)"); *United States v. Howard*, 773 F.3d 519, 527-28 (4th Cir. 2014).

This Court will "apply a presumption of reasonableness to a sentence within or below a properly calculated guidelines range" that "can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Vinson*, 852 F.3d 333, 357-58 (4th Cir. 2017); *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014). The Court places the burden on the defendant to rebut that presumption. *E.g.*, *United States v. Bynum*, 604

33

F.3d 161, 168 (4th Cir. 2010). Mr. Falte has also preserved his claim of substantive unreasonableness by asking for a sentence lower than he ultimately received, and by arguing for that sentence in light of the § 3553(a) factors. *Cf. Lynn*, 592 F.3d at 578.

B. The Imposition of a Life Sentence Is Procedurally Unreasonable When the Court Based the Sentence on Inferences Not Supported by the Record, When Much of the Court's Explanation Could Apply to Any Case, and When the Court Did Not Adequately Explain Why It Was Rejecting Both Sides' Motions for Variance

The primary federal sentencing statute, 18 U.S.C. § 3553, requires that a district court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.]" 18 U.S.C. § 3553(c). In keeping with this statutory directive, the Fourth Circuit has stated that "[d]istrict courts are obligated to explain their sentences, whether those sentences are within or beyond the Guidelines range, although they should especially explain sentences outside this range." *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006) (citation and alteration omitted).

Moreover, the Fourth Circuit has repeatedly reiterated that "[w]hen rendering a sentence, the district court 'must make an *individualized* assessment based on the facts presented.'" *Carter*, 564 F.3d at 328 (quoting *Gall*, 552 U.S. at 50) (emphasis in *Carter*). In other words, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." *Id.* The court in Mr. Falte's case failed to meet the standards set by Congress and by this Court.

34

This Court recognized in *Carter* that a sentence is procedurally unreasonable where the "district court's asserted 'reasons' could apply to *any* sentence, regardless of the offense, the defendant's personal background, or the defendant's criminal history." 564 F.3d at 329 (emphasis in original). The Court reminded district courts that "a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review." *Id.* The Supreme Court has similarly recognized that "a statement of reasons is important" and "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007), *quoted in Lynn*, 592 F.3d at 576; *see Gall*, 552 U.S. at 356, 357 (explaining that the statement of reasons is important not only for appellate review but also because it gives the public confidence in the sentencing process and helps that process to evolve). Accordingly, "[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence than that suggested by the Guidelines, the court should address those arguments and explain why it is rejecting them." *Gall*, 552 U.S. at 356; *see Rita*, 551 U.S. at 357 (same); *Carter*, 564 F.3d at 328 (same).

As in *Carter*, and contrary to the directives in that case, in *Rita* and *Gall*, and in § 3553(c), the court here failed to offer sufficiently individualized reasons for its

35

sentence and failed to explain why it was rejecting not only the defense request for a sentence lower than life but also the government's request.

1.    As a preliminary matter before turning to the deficiencies in the court's explanation of the sentence, the court committed another critical error:  basing the sentence on facts not supported by the record with respect to two of the sentencing factors.  First, with respect to the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), the court appeared to believe that Mr. Falte had actively solicited Thomas Hix to allow him to abuse Hix's daughter.  However, nothing in the record suggests that to be the case; rather, the record suggests just the opposite.  *Compare* J.A. 124-25 (court's statement that "[h]e was able to arrange through the internet the ability to find someone who would essentially lend his daughter to him for sexual purposes") *with* J.A. 65 (government's position that "Mr. Hix offered the defendant and Mr. Faulkner the use of a four-year-old child for their sexual gratification") *and* J.A. 168 (victim's father brought two other men into victim's life to abuse her).

Second, in addressing the need for the sentence to reflect respect for the law, 18 U.S.C. § 3553(a)(2)(A), the court stated that "honestly there is absolutely none shown by Mr. Falte here.  He lived and worked – he lived and worked in the evil part of the web.  Traveled all around the country on numerous occasions, all to [sic] for the purpose of victimizing this child."  J.A. 127.  But the record likewise does not support the court's belief that Mr. Falte did not respect the law, i.e., that he was not

36

law-abiding. To the contrary, Mr. Falte had no criminal convictions whatsoever before this case, and only a single arrest – for driving without a license. J.A. 158-59. Further, the court's assertion that Mr. Falte "traveled all around the country on numerous occasions, all for the purpose of victimizing this child," J.A. 127, is also unsupported. Again to the contrary, the record shows that Mr. Falte traveled a total of three times from the Nashville area to the northern Virginia area.

The court's clear errors in its understanding of some of the crucial facts of this case and Mr. Falte's personal history resulted in its improper distortion of the record and surely influenced its assessment of the appropriate sentence to impose on Mr. Falte.

2.    Turning to others of the § 3553(a) factors, the court's rationale for why imposition of a life sentence was justified could just as easily applied to the imposition of a shorter sentence – including a sentence as "low" as the statutorily mandated minimum sentence of thirty years. For example, with respect to just punishment, 18 U.S.C. § 3553(a)(2)(A), the court observed only that "the guidelines make it clear and the sentencing statute makes it clear by establishing a mandatory minimum that severe punishment is called for here." J.A. 127. But that statement could apply to a whole host of cases, including cases not involving the type of offense at issue here, such as recidivist drug offenses. *See, e.g.*, 21 U.S.C. § 841(b)(1)(A) (for drug offenses triggering ten-year mandatory minimum with maximum of life,

37

minimum increases to twenty years if government seeks enhancement for qualifying prior conviction). Further, as defense counsel reminded the court, "this [case is] not about vengeance, this is about justice. And sometimes justice needs to be tempered with mercy[.]" J.A. 123. The court should have explained to Mr. Falte, given the particular facts of his difficult and tortured personal history and the fact he is a first-time offender, why just punishment required that he spend the rest of his natural life in prison, rather than a lengthy term of years that could have provided him with some faint hope for release. *See* J.A. 115 (government's recognition that "[Mr. Falte] does deserve some hope of ultimate release").

Similarly, with respect to deterrence, 18 U.S.C. § 3553(a)(2)(A), the court recognized that whatever sentence it imposed on Mr. Falte would not likely deter anyone else, but the court was "sure" that the sentence would be an adequate deterrent to Mr. Falte because its length would keep him "out of circulation for a long time." J.A. 127-28. Again, this statement applies equally to a thirty-year sentence, a fifty-year sentence, and a life sentence. Accordingly, the court's consideration of deterrence as a basis for the sentence it selected was insufficiently individualized, and the court should have explained why a thirty- or fifty-year sentence was an inadequate deterrent and why a life sentence was an adequate, not excessive, deterrent.

As a final example, with respect to the need to avoid disparity among similarly situated defendants, 18 U.S.C. § 3553(a)(6), the court commented only that "anybody

38

who gets convicted under this statute is going away for a long time." J.A. 129.  Yet

again, that observation is just as true of the minimum thirty years mandated by 18

U.S.C. § 2241(c) and the fifty years requested by the government as it is of the life

sentence the court imposed.   Moreover, the court's lack of individualized

consideration with respect to this factor is demonstrated further by the fact that the

same judge has made strikingly similar statements with some regularity.[18]

3.    Finally, the court failed to provide any concrete explanation for why it

was rejecting not only the defense request for a sentence less than life imprisonment,

but also the government's request for fifty years.  This Court requires district courts

to address defendants' non-frivolous arguments for below-range sentences. *See, e.g.*,

*United Sates v. Blue*, 877 F.3d 513, 518-19 (4th Cir. 2017); *United States v. Slappy*,

---

[18] *See, e.g.*, *United States v. Coley*, 4th Cir. No. 15-4087, ECF No. 20, Joint Appendix 525 (at sentencing in February 2015, stating that "[t]he next factor is the need to avoid sentencing disparities. I think anybody committing this offense would expect to get a long sentence."); *United States v. Covington*, 4th Cir. No. 13-4851, ECF No. 11, Joint Appendix 38 (at revocation sentencing in October 2013, considering "[t]he need to avoid unwarranted sentence disparities with other defendants who are similar to him.  And, obviously, I think anybody in his shoes would expect to receive a rather substantial jail sentence right now."); *United States v. Antonio-Margarito*, 4th Cir. No. 13-4091, ECF No. 13, Joint Appendix 67 (at sentencing in December 2012, stating that "I am imposing a sentence to try to avoid sentencing disparities among similarly-situated defendants. And I think anybody in his shoes would expect a pretty significant sentence"); *United States v. Johnson*, 4th Cir. No. 11-4785, Doc No. 22, Joint Appendix 83 (at sentencing in July 2011, stating, "The need to avoid sentencing disparities among similarly-situated defendants: I think anybody with his record, with the conduct in this case, would be looking at a long sentence.").

39

872 F.3d 202, 208-09 (4th Cir. 2017). Here, though, all that the court stated was, "I think the other factors in the case outweigh the motion for variance, and that motion will be denied." J.A. 130. But for the reasons argued above, the court's explanation of its consideration of the "other factors" was insufficient.

Moreover, the court's statement was not even clear as to *which* motion, the government's or the defense, it was denying, although it had acknowledged both only a few seconds earlier. J.A. 129-30. The court, however, was required to "provide some indication" that it has "considered the potentially meritorious arguments raised by *both* parties about sentencing" *Montes-Pineda*, 445 F.3d at 380 (emphasis added).

Further, with particular respect to the government's request for a fifty-year sentence, this Court has acknowledged, "no court is ever mandated to impose the sentence recommended by the prosecution . . . ." *United States v. Howard*, 773 F.3d 519, 534-35 (4th Cir. 2014); *see United States v. McCoy*, 804 F.3d 349, 352 (4th Cir. 2015). Nonetheless, the Court has explained, "the prosecutorial experience of the assistants in the Office of the United States Attorney in any district can serve as an important pillar in the achievement of one of the principal goals of the Sentencing Reform Act of 1984 and its system of (now advisory) Guidelines sentencing: the avoidance of unwarranted sentencing disparities." 773 F.3d at 535. Given this Court's guidance, the district court should have provided a more fulsome explanation

40

of why it was rejecting even the government's recommendation for a fifty-year sentence as too low.

In sum, notwithstanding that the district court touched on all of the § 3553(a) factors, it did so in a way that was little more than rote and talismanic. *See Carter*, 564 F.3d at 329 (reminding district courts that "a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review"). Accordingly, this Court should find the imposition of a life sentence to be procedurally unreasonable because the district court failed to provide a sufficiently individualized explanation to justify the sentence's rare length in light of the § 3553(a) factors and both parties' requests for sentences short of life.

C.    The Life Sentence Is Substantively Unreasonable Where Mr. Falte Received a Longer Sentence Than Offenders With Equally Serious or More Egregious Offenses

As noted above, this Court will presume a sentence that is within or below a properly calculated guideline range to be substantively reasonable. *See Vinson*, 852 F.3d at 357-58; *Louthian*, 756 F.3d at 306. A defendant can rebut that presumption only by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors. *See Montes-Pineda*, 445 F.3d at 379. To counsel's knowledge, however, this Court has yet to find any within-range sentence substantively unreasonable, and has given little guidance to defendants as to how to

41

rebut the appellate presumption of reasonableness it employs. Nonetheless, measuring this case against the § 3553(a) factors, particularly those addressing the nature and circumstances of the offense and "the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct," along with "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(6), demonstrates the substantive unreasonableness of the life sentence imposed on Mr. Falte.

To recap, Mr. Falte was convicted of one count of violating 18 U.S.C. § 2241(c), crossing state lines to engage in sexual conduct with a minor under age 12. He engaged on three occasions in abusive sexual conduct with a single victim, who was three and four years old at the time, and whose father had offered her to Mr. Falte and Benjamin Faulkner. Mr. Falte and Faulkner posted photographs from one of the encounters to the website. The child's father, however, had already posted pornographic photographs of his daughter to the site. Mr. Falte has abused no other children. Because the case involved production of pornography, even though Mr. Falte was not convicted of that offense, his guideline range was based on the production guideline, U.S.S.G. § 2G2.1, rather than the guideline directly applicable

to his offense of conviction, U.S.S.G. § 2A3.1.[19]  Mr. Falte pled guilty and was fully

cooperative with the government, which recommended a sentence of fifty years rather

than life imprisonment.

Comparison of these facts to those in other cases from the Eastern District of

Virginia demonstrates the unwarranted disparity created by the insufficiently justified

imposition of the sentence of life imprisonment on Mr. Falte.  For example, in *United

States v. Lorence*, E.D. Va. No. 1:13C-cr-475-JCC, the defendant possessed child

pornography, including images he produced of himself engaged in sexual acts with

a five-year-old girl.  The guideline range for his production conviction was 210 to

262 months.  Whereas the government recommended the low end of the range, the

defendant requested 180 months, which the court imposed.  For production of images

involving sexual abuse by the defendant of a five-year-old victim, Lorrence received

a sentence vastly shorter than what Mr. Falte received.

In *United States v. Hurlbut*, E.D. Va. No. 1:11-cr-292-TSE, another production

case, the defendant took explicit pictures of a friend's children, including a six-month

old, and performed sexual acts on the eight-year-old child that he photographed with

his iPhone.  While the government requested only 240 months, the court imposed 250

months – again, vastly less time than the district court here imposed on Mr. Falte.

---

[19]  As noted earlier, *see supra* footnote 12, the guideline range calculated
pursuant to § 2A3.1 would have been 360 months to life imprisonment.

Similarly, in *United States v. Manring*, E.D. Va. No. 1:13-cr-13-CMH, the defendant produced multiple videos over a three-year period of himself performing sex acts on at least seven different five-year-old children, yet the court sentenced him to only 168 months, the bottom of the range – and even lower than the sentences in the preceding examples.

Finally, in *United States v. Colwell*, E.D. Va. No. 2:11-cr-182-RBS, the defendant pled guilty to violating § 2241(c), based on conduct that occurred over a nineteen-month period in which he sexually abused a nine-year-old girl multiple times in multiple ways. Colwell's advisory guideline range was life imprisonment. The defense requested a sentence of 360 months (the statutory mandatory minimum), while the government requested a sentence between 420 and 480 months (as per the plea agreement). The court sentenced Colwell to 480 months.

In all of these examples, judges in the Eastern District of Virginia imposed sentences ranging from 168 months to 480 months for conduct that was at least as serious, if not more serious, than Mr. Falte's conduct. Yet the court imposed a life sentence on Mr. Falte with no acknowledgment whatsoever that such a sentence would create considerable unwarranted disparity in light of the facts of this case as compared to other cases involving defendants with similar records who committed similar – or worse – offenses. Instead, the court merely commented that "anybody who gets convicted under this statute is going away for a long time." J.A. 129.

The imposition of a sentence so out of line with other cases that are far more serious fails "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). To the contrary, the sentence undermines these core purposes of sentencing, for applying the law in such an uneven manner undermines respect for the criminal justice system and its ability to mete out just punishment. Finally, the imposition of life imprisonment on a 27-year-old with no criminal record is far greater than necessary to deter him from future criminal conduct or to protect the public, especially as he will subjected to strict conditions of supervised release for life, and required to register as a sex offender. *See* 18 U.S.C. § 3553(a)(2)(B), (C). In short, the sentence is substantively unreasonable. Accordingly, this Court must vacate it and remand for resentencing.

## <u>CONCLUSION</u>

Counsel present this brief to the Court after having examined the record of the case and determining that there is no meritorious ground for appeal. Pursuant to the directive of the *Anders* case, counsel invite the Court to review de novo the entire record and all pertinent documents in this case to determine whether there is any other issue that the Court would like undersigned counsel to brief for it.

Respectfully submitted,

GEREMY C. KAMENS
Federal Public Defender
for the Eastern District of Virginia

_____s/ Frances H. Pratt_____
Frances H. Pratt
Carolyn V. Grady
Assistant Federal Public Defenders
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Fran_Pratt@fd.org
Carolyn_Grady@fd.org

Dated February 12, 2018

## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellant assert that the issue raised in this brief may be more fully

developed through oral argument, and respectfully request the same.

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This Brief of the Appellant has been prepared using WordPerfect X6 software, Times New Roman font, 14-point proportional type size.

2.  EXCLUSIVE of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains no more than 13,000 words, specifically 11,567 words.


I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


<table>
<tr><td>February 12, 2018</td><td>s/  Frances H. Pratt</td></tr>
<tr><td>Date</td><td>Frances H. Pratt<br>Assistant Federal Public Defender</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2018, I electronically filed the foregoing document for which conventional service is required with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jessica D. Aber
Assistant U.S. Attorney, E.D. Va.
Jessica.D.Aber@usdoj.gov

Lauren E. Britsch
Attorney, U.S. Dep't of Justice
Lauren.Britsch@usdoj.gov

I further certify that on February 12, 2018, I sent the foregoing document, along with Volume I of the joint appendix, by U.S. Mail, certified first-class postage prepaid, to the following non-CM/ECF participant, addressed as follows:

Mr. Patrick Dane Falte
c/o Grayson County Detention Center
320 Shaw Station Road
Leitchfleld, KY  42754

_____s/  Frances H. Pratt_____
Frances H. Pratt
Assistant Federal Public Defender